IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

S.P. and H.P., individually and on behalf
of I.P., a minor,

                                       CASE NO.:

     Plaintiffs,

v.

BROWARD COUNTY SCHOOL BOARD and
SYLVIA PALLANTE, individually,

     Defendants.

_____/

## COMPLAINT AND JURY DEMAND

       COME NOW the plaintiffs, S.P. and H.P., individually and on behalf of I.P., a minor, by and through the undersigned counsel and hereby allege as follows:

## PARTIES

1. The plaintiff, S.P., is an individual, *sui juris*, who resides in Broward County, Florida, at all times relevant.

2. The plaintiff, H.P., is an individual, *sui juris*, who resides in Broward County, Florida, at all times relevant.

3. The plaintiffs, I.P., is a minor who has resides in Broward County, Florida, at all times relevant.

4. The Defendant, BROWARD COUNTY SCHOOL BOARD, ("Board" or "District") is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Broward County Public Schools ("BCPS.")

5. The Defendant, SYLVIA PALLANTE, is an individual, *sui juris*, who resides in Broward County, Florida and is an employee of Broward County Public School System, at all times relevant.

6. The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

7. Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Individuals with Disabilities Act, 20 U.S.C. § 1400 et seq. ("IDEA") and 42 U.S.C. §§ 1983 & 1988 for violations of S.P., H.P. and I.P.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

8. Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the Board resides in the judicial district and the cause of action accrued in the judicial district.

## GENERAL ALLEGATIONS

9. BCPS receives state and federal funding for education.

10. S.P. and H.P. are the natural parents ("parents") of I.P.

11. I.P. has been identified as having an Autism Spectrum Disorder (ASD) and is essentially non-verbal. He also suffers from a heart condition and has an allergy to tree nuts.

12. BCPS has identified I.P. as a student entitled to received exceptional student education (ESE) services due to his disabilities.

13. I.P. became eligible for ESE services under the category of ASD in Pre-Kindergarten and eligibility remains the same to date.

14. I.P. is currently 9 years old with a date of birth of July 16, 2009.

15. I.P. in currently in the 4th grade at Coral Park Elementary School.

16. I.P. has had an IEP since pre-kindergarten and continues to have an IEP to date.

17. I.P. began attending Atlantic West Elementary school in kindergarten and remained there until January 2018, during his third-grade school year.

18. I.P. has always been placed in a separate ASD self-contained classroom with little, if any, integration with his non-disabled peers.

19. I.P. is not on sunshine state standards and instead is on a modified curriculum.

20. I.P. has a limited ability to communicate and has only just began to verbally express himself in single word statements and through vocalizations.

21. I.P. cannot come home and tell his parents about his school day or what happens to him while he is at school.

22. I.P. communicates through gestures and behaviors.

23. I.P. received language therapy as a related service on his IEP.

24. I.P. receives additional therapies outside of school including speech, occupational and physical therapy, along with ABA (applied behavior analysis) therapy.

25. Atlantic West only has a speech and language therapist at the school. There are "intermittent" OT therapists and a PT is available but no student at Atlantic West receives physical therapy.

26. The district never provided I.P. with speech, occupational, physical or ABA therapy telling I.P.'s mother that the school did not offer these therapies to students at school.

27. During the 2016-2017 school year, I.P. was in the 2nd grade at Atlantic West Elementary School in a self-contained separate ASD cluster classroom.

28. During the 2017-2018 school year, I.P. remained at Atlantic West Elementary School in the same self-contained classroom for the 3rd grade school year until February 5, 2018.

29. I.P. was placed in a self-contained autism cluster class and his individual needs became obsolete.

30. Time and time again, no effort from his teacher, principal, autism coach or ESE Specialist at Atlantic West and they never demonstrated they were there to help I.P. make meaningful progress.

31. Despite a documented need for behavior, communication, occupational therapy and independent functioning no evaluations by qualified experts took place between 2012 and 2018 before he entered Atlantic West and only after he left Atlantic West.

32. I.P.'s mother requested evaluations several times over the years both verbally and as documented in the parent input sections of IEPs and reevaluation documents.  She also shared valuable information from privately paid therapists whom she hired because she was told certain therapies could not be provided at the school.

33. With the school's knowledge, I.P. left school early so that he could attend some of these services throughout the school year. I.P.'s mother had what she thought was a trustworthy relationship with the school and she trusted them completely.

34. In reviewing I.P.'s IEPs, it is evident that the general levels remained unchanged and problem behaviors that interfered with learning did not cease or get better.

35. Early in the 2017/2018 school year, S.P. was informed by another student that I.P. may have been abused in the cafeteria at school.

36. S.P. immediately met with the school principal to ask that she investigate to make sure that the report was true.

37. Since I.P. is essentially non-verbal, he could not tell his parents what occurred.

38. I.P. cannot speak but he can feel.

39. Despite multiple requests, it was not until January 2018, when I.P.'s parents were finally allowed to view their own child's educational record (videos). What they saw was horrifying to them.

40. No one from the District informed the parents about this incident despite having viewed the video evidence and knowing with certainty that I.P. had been hit on two separate occasions.

41. I.P. was hit because there were not the proper services and supports in place to address this child's needed.

42. I.P. was hit because the people working with I.P. were not properly trained.

43. These failures are a denial of a free appropriate public education (FAPE) in violation of the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA).

TIME LINE DURING THE 2017-2018 SCHOOL YEAR:

44. On August 21, 2017, defendant, SYLVIA PALLANTE, classroom aide, hit I.P. while he was in the cafeteria. This violent incident was captured on video tape.

45. On August 25, 2017, the school attempted to change I.P.'s classroom due to "problem behaviors".

46. On August 28, 2017, defendant, SYLVIA PALLANTE, classroom aide, hit I.P. again while he was in the cafeteria. This violent incident was again captured on video tape.

47. On August 29, 2017, S.P. is told by another student that he son was hit in the cafeteria.

48. S.P. told Ms. Rant, the Autism coach/BCBA that same date who stated she would set up a meeting with the principal.

49. On August 30, 2017, S.P. had a meeting with the school principal about I.P. being hit in the cafeteria.

50. On November 7, 2017, S.P. emailed the classroom teacher regarding issues related to juice and food not being eating during lunch and again acknowledging continued problems in the lunch room.

51. On January 12, 2018, S.P. and H.P. were able to view the videos for the first time.

52. On January 24, 2018, a third hitting incident was reported by other students to S.P.

53. On January 26, 2018, S.P. requested a reassignment to another school and issued a 10 day notice to cure to the school.

54. On January 31, 2018, an interim IEP meeting was held at Atlantic West Elementary School.

55. On February 1, 2018, Plaintiffs, through counsel, filed a request for a due process hearing for violations of the IDEA and Section 504 of the Rehabilitation Act.

56. On February 1, 2018, I.P. reassigned to Coral Park Elementary School was approved by the district.

57. On February 5, 2018, I.P. began to attend Coral Park Elementary School and remains there to date.

58. The complaint was provided by the School District to the Division of Administrative Hearings (DOAH) on February 5, 2018 and a case management order was issued on February 5, 2018.

59. On February 12, 2018, the District filed a notice of insufficiency which the court granted on the same date before counsels for the Plaintiffs were able to respond.

60. On February 22, 2018, a re-evaluation meeting was held at Coral Park Elementary School.

61. On February 22, 2018, the Plaintiffs filed a motion to reconsider and an amended request for a due process hearing. The District again filed a notice of insufficiency on February 23, 2018. Plaintiffs filed a response thereto and the Court denied the district's motion on February 27, 2018.

62. An Amended Case Management Order was issued on March 5, 2018.

63. The Plaintiffs filed a request for clarification of the amended case management order on March 6, 2018 and a Clarified Case Management Order was issued by the court on that same date.

64. On March 8, 2018, the Plaintiffs files a notice with the court along with a request that a hearing be set in this matter.

65. On March 9, 2018, the district files what they titled a response to the request for due process. On March 13, 2018, there was a hearing held to set dates for the due process hearing. A hearing was set to begin May 7, 2018.

66. On March 19, 2018, Plaintiffs filed a motion to strike the District's response to the request for due process hearing and request for judicial notice. The court denied this motion on the same date.

67. On April 24, 2018, the Plaintiffs filed a motion to compel discovery and request for a hearing on the same. The matter was heard by this court on May 3, 2018. The motion to compel discovery is granted in part and the due process hearing was moved to May 22, 2018.

68. On May 10, 2018, the Plaintiffs filed two additional motions to compel discovery and a request for a hearing on the same. A hearing was held on May 14, 2018. The district

represented to the court that the requested information did not exist or was already provided thus the motions were denied.  The district confirmed the same in writing on May 17, 2018.

69. The day before the hearing on May 21, 2018, the district filed additional discovery. On July 12, 2018, the district filed additional discovery after the close of the record in this matter and on that same date, the Plaintiffs filed a motion to strike as untimely. The motion was granted on July 17, 2018.

70. There were three days of hearing.  The hearing began on May 22, 2018, and concluded on May 24, 2018. Proposed final orders were filed on July 17, 2018.

71. On August 16, 2018, a Final Order was issued, a copy of which is attached hereto as Exhibit "A" and incorporated *as if fully* set forth herein.

72. The Final Order found that the procedural violations were not material; that the student was provided with FAPE during the 2016-17; 2017-18 school years; that the student being hit was not material or a denial of FAPE and thereby dismissed the complaint in its entirety.

73. In a footnote (FN 1 at pg. 57 of the final order) in the final order the court declined to hear the 504 issues that were raised in the due process complaint finding that those claims were not properly referred to DOAH by the school district.

74. S.P., H.P. and I.P. are aggrieved parties from the Final Order.

75. S.P., H.P. and I.P. have performed all conditions precedent prior to the filing of the instant action.

76. S.P. and H.P. have engaged the firms of Cammarata & Cammarata, P.L. and Disability Independence Group, Inc. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT 1
## <u>DE NOVO REVIEW</u>

77. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78. I.P. is entitled to a de novo review of the Final Order for which he is aggrieved.

79. The Plaintiffs are aggrieved by the decision that found that there were no violations of FAPE and that the procedural violations were not material and that the student being hit was not material or a denial of FAPE.  In addition, the refusal by the ALJ to hear the properly plead 504 claims is without precedent and in direct contradiction to the procedures of the District.

WHEREFORE, S.P. and H.P. on behalf of I.P. requests a *de novo* review of the Final Order and demand judgment against the Defendant, BROWARD COUNTY SCHOOL BOARD, and requests this court to enter an Order that:

 a. reverses the decision of the Administrative Law Judge (ALJ) and determine that the procedural violations were a denial of FAPE;

 b. reverses the decision of the ALJ and determine that there was a denial of FAPE during the 2016-17 and 2017-18 school years;

 c. reverses the decision of the ALJ and determine that hitting a student is material and does rise to the level to be a denial of FAPE;

 d. reverses the decision of the ALJ and determine the ALJ did have jurisdiction to hear properly plead violations of Section 504 of the Rehabilitation Act (non-idea claims) for discrimination and retaliation;

 e. reimburses the expenses incurred by S.P. and H.P. for related services

provided privately; and

f.        pay reasonable costs and attorney's fees incurred by S.P. and H.P. together with

such further relief as the court deems just and equitable.


**COUNT 2**
**CIVIL RIGHTS – PROCEDURAL DUE PROCESS**

80. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the

Complaint as if fully set forth herein.

81. Pursuant to IDEA and the Florida law implementing IDEA, the district had a duty and

failed to provide the Plaintiffs with procedural safeguards, including:

a.        Failure to timely evaluate I.P.;

b.        failure to develop an BIP for I.P.;

c.        failure to implement an appropriate BIP;

d.        failure to hold timely IEP meetings; and

e.        failure to allow the parent's meaningful participation.

82. These violations were not de minimus and impacted the parents' ability to

participate as equal members in the process, delayed and denied the student access

to the supports needed to access his education in the least restrictive environment.

83. The District's failures deprived the Plaintiffs of the right to procedural due process

under the United States and Florida Constitutions.

84. By violating these constitutional rights, the District deprived the Plaintiffs of their

civil rights pursuant to 42 U.S.C. § 1983.

85. As a result of the deprivation of their civil rights, the Plaintiffs have been damaged.

WHEREFORE, S.P. and H.P. on behalf of I.P., demand judgment against the Defendant, BROWARD COUNTY SCHOOL BOARD, for damages, together with their attorney's fees and costs pursuant to 42 U.S.C §1988, and such further relief as the court deems just and equitable.

## COUNT 3
## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT

86. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

87. Plaintiffs further allege that the District failed to create and ensure implementation of I.P.'s IEPs and behavior plans in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165.

88. The District is a public entity and recipient of federal financial assistance, and is therefore subject to Title II.

89. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

90. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

91. Hitting children in the public school setting as a form of redirection and/or discipline and feeling emboldened to be able to hit a student without consequence because the

student has a disability and is nonverbal is exactly the type of discrimination the ADA and its amendments aim to prevent and specifically prohibit.

92. As public entities and instrumentalities of the state, the District is prohibited from providing "a qualified individual with a disability with an aide, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii).

93. Children with disabilities are provided with support staff that are not trained or under trained and therefore children, like I.P., are injured. These injuries are avoidable and preventable with the proper level of support, which includes the level of training of support staff before they are allowed to work with students. This is especially true for non verbal students who are unable to report wrongdoing when it occurs. I.P. was unable to report what occurred. The incidents were witnessed and then reported by other students and then later confirmed on video tape. Often times incidents are not recorded and go unreported. The District has a practice of placing the most vulnerable students with the least qualified staff.

94. The District has discriminated against I.P. in violation of the ADA on the basis of his disabilities by failing to timely evaluate I.P. and by denying him appropriate behavioral services in a school-based setting, resulting in his being hit by his paraprofessional on more than one occasion.

95. The Defendant, SYLVIA PALLANTE, has been allowed to continue to work with children after she hit the Plaintiff.

96. The actions of the District were done with deliberate indifference to the rights of I.P., and his parents, and as such, the Plaintiffs are entitled to damages for their injuries therefrom.

WHEREFORE, S.P. and H.P., individually and on behalf of I.P.,, respectfully request this Court declare the actions of the Defendant, BROWARD COUNTY SCHOOL BOARD, violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendant from discriminating against students with disabilities and awarding Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT 4
## SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794(a)

97. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

98. Plaintiffs further allege that I.P. has a disability that substantially limits one or more major life activities and is a person with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8).

99. I.P. is otherwise qualified under section 504 of the Rehabilitation Act because he met the essential eligibility requirements of the District at all times material hereto.

100.   Defendant is a recipient of federal financial assistance.

101.   The District's policies, practices and procedures violated the Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating against the Plaintiff because of his disability.

102.   Section 104.33 requires that Defendants to provide FAPE to "each qualified handicapped person who is in the recipient's jurisdiction." For purposes of Section 504, an "appropriate education" is the:

> provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

103.   An "appropriate education" can also be provided by implementing an IEP that is compliant with IDEA. 34 C.F.R. §104.33(b)(2).

104.   Because the District did not timely identify and evaluate I.P. they violated section 504.

105.   In addition, because the District did not have an appropriate IEP and BIP and because the District failed to implement the BIP with fidelity, the Defendant has violated section 504.

106.   Repeatedly hitting of I.P. for identified and known problem behaviors, resulted in an escalation of those behaviors, which lead to trauma, a dislike of the cafeteria or anything associated with lunch at school.

107.   The Defendant has discriminated against I.P. in violation of Section 504 of the Rehabilitation Act on the basis of his disabilities by failing to evaluate and provide the proper level of supports and services and by failing to properly train or supervise support staff working with disabled children, especially the most vulnerable, non verbl students.

108.    The actions of the District were done with deliberate indifference to the rights of I.P., and his parents, and as such, the Plaintiffs are entitled to damages for their injuries as a result of these discriminatory policies.

WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief against the District, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to and benefit from Defendant's services, award compensatory damages, reasonable costs and attorneys' fees and any other relief this court deems necessary and appropriate.

## COUNT 5
## RETALIATION

97. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

98. Retaliation is prohibited under the ADA. 42 U.S. Code § 12203.

99. The definition of retaliation is found in the implementing regulations of the Americans with Disabilities Act at 28 CFR 36.206.

100.    Plaintiffs allege that the Defendant's failure to advise the parents that I.P. had been hit by the Defendant, SYLVIA PALLANTE, the delay in allowing the parents to view the video tape of the two incidents, the failure to inform the staff working with I.P. that he had been hit and the failure to hold an IEP meeting to address the incidents were done in direct response and in retaliation for the parents strong efforts to advocate for I.P.

101.    A prima facie case for retaliation consists of four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an action adverse to the plaintiff; and 4) the protected activity and the adverse action are causally connected.

102.    In this case, advocating for I.P. is a protected action. The Defendants were aware of the family's advocacy and in response the Defendant hide information, delayed the disclosure of information and allowed the Defendant, SYLVIA PALLANTE, to continue working with children and having access to I.P.

103.    Plaintiffs have suffered severe emotional distress due to Defendant's retaliatory acts.

WHEREFORE, S.P. and H.P., individually and on behalf of I.P., demand judgment against the Defendant for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

## COUNT 6
## BATTERY

104.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

105.    On August 21, 2017, defendant, SYLVIA PALLANTE, worked as a classroom aide in a Broward County Public School.

106.    In the course of her employment she worked with I.P.

107.    I.P. was a student and as such an invitee of the District.

108.    I.P. was in a school building owned and operated by the District when he was hit by Defendant SYLVIA PALLANTE.

109.   On August 21, 2017, defendant, SYLVIA PALLANTE, hit I.P. while he was in the cafeteria.

110.   This violent incident was captured on video tape.

111.   Defendant, SYLVIA PALLANTE, violated Florida Statute 784.03 by committing a battery upon I.P. for hitting I.P.

112.   As a direct and proximate result of Defendant, SYLVIA PALLANTE's conduct, I.P. suffered not only physical abuse but emotional trauma.

WHEREFORE, the Plaintiffs, S.P. and H.P., on behalf of I.P sue Defendant, SYLVIA PALLANTE for damages in excess of $15,000 including pre-and post judgment interest to the extent allowed by law, plus costs and interest, and demands a jury trial of all triable issues.

## COUNT 7
## <u>BATTERY</u>

113.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

114.   On August 28, 2017, defendant, SYLVIA PALLANTE, worked as a classroom aide in a Broward County Public School.

115.   In the course of her employment she worked with I.P.

116.   I.P. was a student and as such an invitee of the District.

117.   I.P. was in a school building owned and operated by the District when he was hit by Defendant SYLVIA PALLANTE.

118.   On August 28, 2017, defendant, SYLVIA PALLANTE, hit I.P. while he was in the cafeteria.

119.   This violent incident was captured on video tape.

120.    Defendant, SYLVIA PALLANTE, violated Florida Statute 784.03 by committing a battery upon I.P. for hitting I.P.

121.    As a direct and proximate result of Defendant, SYLVIA PALLANTE's conduct, I.P. suffered not only physical abuse but emotional trauma.

WHEREFORE, the Plaintiffs, S.P. and H.P., on behalf of I.P sue Defendant, SYLVIA PALLANTE for damages in excess of $15,000 including pre-and post judgment interest to the extent allowed by law, plus costs and interest, and demands a jury trial of all triable issues.

## COUNT 8
## NEGLIENT SUPERVISION

122.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

123.    The Defendants had a legal duty to properly supervise I.P. while he was on a school campus.

124.    Defendants breached such duty by failing to supervise I.P. in a manner that protected him from being hit on two separate occasions by the classroom aide.

125.    The Defendant, SYLVIA PALLANTE, and the BOARD's agents, employees and/or teachers were negligent in their duty to supervise the Plaintiff.

126.    As a direct and proximate cause of the negligent supervision, the Plaintiff suffered injury, both physical and emotional.

127.    These injuries were entirely preventable.

128.    The Defendants were negligent in the manner that I.P. was supervised while on the school campuses.

WHEREFORE, the Plaintiffs sue Defendants for damages in excess of $15,000 including

pre-and post judgment interest to the extent allowed by law, plus costs and interest, and demands a jury trial of all triable issues.

## COUNT 9
## <u>NEGLIGENCE</u>

129.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

130.    At all times material, the BOARD owed a duty to I.P. to use reasonable care to ensure I.P.'s safety, care, health, and well being by hiring, retaining, assigning, supervising and training its faculty who were employed and/or acted as agents in supervisory roles, such as Defendant, SYLVIA PALLANTE in her position working with students who have disabilities, especially non verbal students.  These students are some of the most vulnerable in the public school system.

131.    At all times material, the BOARD was in *loco parentis* and was held to a standard of reasonable protection for the Plaintiff – a disabled child student.

132.    At all times material, the BOARD knew, or in the exercise of reasonable care should have known, that Defendant, SYLVIA PALLANTE was unfit, dangerous and a threat to the health, safety, and welfare of I.P. and other disabled students.

133.    At all times material, the BOARD owed I.P. a duty to investigate Defendant, SYLVIA PALLANTE's past and present conduct and warn I.P. and his parents of the potential for harm from Defendant, SYLVIA PALLANTE, disclose its awareness of facts regarding Defendant, SYLVIA PALLANTE that created a likely potential for harm, provide a safe environment for I.P. from exposure to harmful individuals like Defendant, SYLVIA PALLANTE.

134.    At all times material, the BOARD had a duty to ensure that the appropriate interventions and accommodations and services and supports were in place for this disabled student.

135.    At all times material, the BOARD had a duty to ensure that the staff working with and having contact with I.P. were trained on his disability and his needs and that they had the appropriate services, interventions and supports in place to ensure I.P.'s safety on a school campus.

136.    At all times material, the BOARD breached these duties in one or more of the following ways:

a.    Failing to provide a safe environment for I.P. where he would be free from being hit by Defendant, SYLVIA PALLANTE;

b.    Failing to have policies and procedures in place to protect its students from abuse by employees such as Defendant, SYLVIA PALLANTE;

c.    Failing to have policies and procedures in place to ensure that other employees report abuses like those committed by Defendant, SYLVIA PALLANTE; and

d.    Failing to provide the appropriate services and/or training for staff interacting with a disabled student.

137.    As a further direct and proximate cause of the negligence of the BOARD, I.P. was subjected to physical abuse which caused I.P. to suffer physical injury and psychological injures along with suffering humiliation, embarrassment, anxiety, loss of trust and loss of the capacity for the enjoyment of life.

WHEREFORE, the Plaintiffs sue Defendant BROWARD COUNTY SCHOOL BOARD for damages in excess of $15,000.00 including pre-and post judgment interest to the extend allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

**COUNT 10**
**NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION**

138.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the

Complaint as if fully set forth herein.

139.    At all times material, the BOARD owed a duty to the public and specifically to I.P.,

a disabled student, to employ qualified and competent employees to work within its

schools, and specifically within its segregated populations, including Defendant,

SYLVIA PALLANTE.   This duty is even greater in the context of a public school

where parents have a trust and faith in the leaders, a reliance on those who are chosen

to lead, and the school acts in *loco parentis*.

140.    The BOARD has an extra duty to protect students with disabilities, especially those

who are nonverbal and receives local, state and federal monies to do the same. This

duty includes having the appropriate services, supports, interventions and trained staff

in place to meet the unique needs of each disabled student, including I.P.

141.    At all times material, the BOARD owed a duty to the public and Plaintiff, I.P., to

make an appropriate supervision and investigation of its employees, servants, and/or

agents who were in or would be placed in a position to come into contact with disabled

students of the BOARD.

142.    At all times material, the BOARD owed a duty to Plaintiff, I.P. to terminate any

and all employees, servants and/or agents that it knew or should have known had

engaged or sought to engage in abusive and/or neglectful conduct with its disabled

students.

143.    At all times material, the BOARD owed a duty to Plaintiff, I.P. to make an

appropriate investigation of its employees, servants, and/or agents who were in or would be placed in a position to come into contact with disabled students, and to ensure the disabled students' individual needs were being met and that these students were free from excessive physical restraint and isolation.

144.   At all times material, the BOARD owed a duty to Plaintiff, I.P. to terminate any and all employees, servants, and/or agents that it knew or should have known had engaged or sought to engage in abusive harmful behavior.

145.   At all times material, the BOARD owed a duty to the public and Plaintiff, I.P. to train its employees, servants, and/or agents to identify when an abuse and/or neglectful acts occur, are ongoing or have the potential to occur, and to report it accordingly.

146.   Defendant knew or in the exercise of reasonable care should have known that by allowing Defendant, SYLVIA PALLANTE to have access to disabled students without proper supervision or oversight, and/or without the proper supports, interventions, accommodations or services, that disabled students were at grave risk of being subjected to physical abuse that was used in a punitive manner to discipline the student for known problem behaviors that were a clear manifestation of his disability.

147.   At all times material, the BOARD breached its duty to Plaintiff, I.P. in the following ways:

   a.   failing to hire competent and qualified employees, servants, agents and/or agents without proclivities to engage in abusive and neglectful acts against its disabled students;

   b.   failing to hire competent and qualified employees, servants, and/or agents with knowledge and training needed to accurately identify abuse of disabled students,

and act accordingly;

c.      failing to train its employees, servants and/or agents to work with disabled students with respect and dignity;

d.      failing to train its employees, servants and/or agents to identify and report when a member of the BOARD staff is attempting to engage in and/or is engaging in abusive and neglectful acts against its disabled students;

e.      failing to supervise Defendant, SYLVIA PALLANTE in a proper manner to prevent the abuse of its disabled student I.P.;

f.      failing to train its employees, servants and/or agents to report abusive acts by other employees, servants, and/or agents;

g.      failing to terminate or reassign those employees, servants, and/or agents who were aware of these actions of Defendant, SYLVIA PALLANTE against I.P. but did nothing to stop or report it;

148.    As a further direct and proximate cause of the negligence of the BOARD, I.P., has suffered physical and psychological injury, humiliation and embarrassment.

WHEREFORE, Plaintiffs, sue Defendant BROWARD COUNTY SCHOOL BOARD, for damages in excess of $15,000.00 including pre-judgment and post judgment interest to the extent allowed by law, plus costs and interest, and demand a trial by jury for all triable issues.

## COUNT 11
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

149.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

150.    Plaintiffs further allege that the Defendant had knowledge of Plaintiff, I.P.'s disability and his needs, however and notwithstanding that knowledge, intentionally deprived Plaintiff of his rights.  The Defendant withheld vital information from the parents and staff working with I.P.

151.    Based upon the Defendant's outrageous acts of discrimination and retaliation, showing both deliberate and reckless acts, the Defendant intentionally inflicted emotional distress unto the Plaintiffs.

152.    As a result of the Defendant's actions, Plaintiffs suffered damages.

**WHEREFORE**, S.P. and H.P., individually and on behalf of I.P., demand a judgment against the Defendant for compensatory damages, extreme emotional distress, damages of physical discomfort and inconvenience, mental suffering, humiliation, loss of enjoyment of life, punitive damages, interest, attorneys' fee and such further relief as this court deem just and equitable.

## COUNT 12
## FLORIDA EDUCATIONAL EQUITY ACT

153.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

154.    The Florida Educational Equity Act (FEEA) prohibits discrimination against students in the Florida public school system on the basis of race and disability. s. 1000.05, F.S.

155.    No person shall be excluded from participation in, be denied benefits of or be subjected to discrimination under any public education program or activity.

156.    The discriminatory and retaliatory acts and omissions by the Defendant resulted in

the exclusion from participation in, benefits of the public school program.

157.    As a result of the Defendant's actions, the Plaintiffs suffered damages.

**WHEREFORE**, S.P. and H.P., individually and on behalf of I.P., demand judgment against

the Defendant, BROWARD COUNTY SCHOOL BOARD, for damages, together with their

attorney's fees and costs, and such further relief as the court deems just and equitable.

## JURY DEMAND

**A TRIAL BY JURY IS DEMANDED FOR ALL ISSUES TRIABLE AS OF RIGHT BY A
JURY.**

Dated this 14th day of November, 2018.

**DISABILITY INDEPENDENCE GROUP, INC.**

By:__s/ Stephanie Langer_____
        Stephanie Langer, Esq.
        Florida Bar No: 149720

        2990 Southwest 35th Avenue
        Miami, Florida 33133
        T: (305) 669-2822 / F: (305) 442-4181
        Email: slanger@justDIGit.org
               aa@justdigit.org

        Maria Cammarata, Esq.
        FL Bar# 0164240
        Cammarata & Cammarata, P.L.
        911 E. Atlantic Blvd., #108A
        Pompano Beach, FL 33060
        T: 954-802-8423/ F: (954) 692-9184
        Email: maria@cammlaw.com

        *Attorneys for the Plaintiffs*